UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FYDA FREIGHTLINER CINCINNATI, INC.**, *et al.*,

    **Plaintiffs,**

v.

**DAIMLER VANS USA LCC,** *et al.*,

    **Defendants.**

:

:

**Case No. 2:21-cv-5077
Judge Sarah D. Morrison
Magistrate Judge Elizabeth Preston Deavers**

## OPINION AND ORDER

This matter is before the Court on three motions: (1) a Motion to Dismiss filed by Defendants Daimler Vans USA and Mercedes-Benz USA ("MBUSA") (ECF No. 23); (2) Plaintiffs Fyda Freightliner Cincinnati, Fyda Freightliner Columbus, and Fyda Freightliner Pittsburgh's Motion for Leave to File a Sur-Reply (ECF No. 30); and (3) Defendants' Motion for Leave to File a Supplemental Memorandum (ECF No. 37).

**I.    BACKGROUND**

Plaintiffs are each Freightliner dealers enfranchised by Daimler. (ECF No. 1, Compl., ¶¶ 1, 16–18, 80.) Plaintiffs sell and service Sprinter vans, a commercial utility van used primarily by businesses. (*Id.*, ¶ 1.) Daimler and its parent company MBUSA are both licensed motor vehicle manufacturers or distributors under Ohio and Pennsylvania law. (*Id.*, ¶¶ 19–20.) Plaintiffs have the right to buy Freightliner

Sprinters from Daimler for resale and hold non-exclusive licenses to utilize the Sprinter trademark. (*Id.*, ¶¶ 1, 7.)

The Freightliner Sprinters distributed by Daimler and the Mercedes-Benz Sprinters distributed by MBUSA are "virtually identical physically" and are both designed, marketed, and sold using the "Sprinter" name, trademark, and logos. (*Id.*, ¶ 38.) There are no separate registered trademarks for "Mercedes-Benz Sprinter" and "Freightliner Sprinter" – rather, there is only a "Sprinter" trademark. (*Id.*, ¶¶ 41–42.) Plaintiffs allege that the "Sprinter vehicle distributed by Daimler [ ] and the Sprinter vehicle distributed by MBUSA belong to the same line make of motor vehicle because, among other reasons, they are both manufactured, distributed, and sold under the common 'Sprinter' trademark." (*Id.*, ¶ 48.) A "line-make" is a "collection of models, series, or groups of motor vehicles manufactured by or for a particular manufacturer, distributor, or importer that are offered for sale, lease, or distribution pursuant to a common brand name or mark." Ohio Rev. Code § 4517.542(J)(2).

Since 2018, Defendants have directed that a proportionally greater number of Sprinters be allocated and distributed to the MBUSA dealer network than to the Daimler dealer network. (*Id.*, ¶ 55–57.)

In August–September 2020, Daimler notified Plaintiffs that as of December 31, 2021, production and distribution of the "Freightliner Sprinter" would end, and it was terminating their franchise agreements. (*Id.*, ¶¶ 2, 58–59; ECF No. 23-1,

2

PageID 101–03.[1]) MBUSA is now the sole distributor of Sprinters to dealers and, upon Plaintiffs' information and belief, is distributing the vans to some of Daimler's ex-Freightliner franchisees, but not to Plaintiffs. (*Id.*, ¶¶ 5, 35, 60, 80.) MBUSA has not offered a franchise to Plaintiffs. (*Id.*, ¶ 62–63.)

### *Plaintiff's Actions before the Ohio Motor Vehicle Dealers Board*

Preceding these events, Fyda Cincinnati and Fyda Columbus were involved in two actions before the Ohio Motor Vehicle Dealers Board (the "Board") against Daimler.[2] (ECF Nos. 23-2, 23-3.) In 2014, MBUSA sought to establish new Mercedes-Benz commercial vehicle dealers in the vicinity of Fyda Freightliner Cincinnati and Columbus dealerships. Both Fyda dealerships filed protest actions before the Board; the Board is the agency charged with administering Ohio law governing relationships between motor vehicle distributors and dealers. Fyda filed the protests pursuant to R.C. § 4517.50, the statute that authorizes dealers to protest the establishment of new competitor-dealers of the "same line-make" within a prescribed market area. (See generally, ECF Nos. 23-2, 23-3.)

---

[1] "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

[2] Although these actions were not addressed in the Complaint, the Court may take judicial notice of "letter decisions of governmental agencies" without converting this motion to dismiss to a motion for summary judgment. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 87 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). It does so here.

3

In the first action, Fyda Cincinnati sought, *inter alia*, a determination under Ohio law that the establishment of "a Mercedes-Benz dealer authorized to sell Sprinter vans manufactured by Diamler AG within the relevant market area is a dealer of the same 'line-make' as [Fyda's], a Freightliner dealer authorized to sell Sprinter vans manufactured by Diamler AG." (ECF No. 23-2, PageID 107.) The Board's jurisdiction over the protest turned on the issue of whether the Mercedes-Benz Sprinters and Freightliner Sprinters were the same line-make. (*Id.*) A hearing examiner concluded that the two are different line-makes and recommended dismissal of the protest. (*Id.*, PageID 111–12.) The Board adopted the hearing examiner's decision in April 2015. (ECF No. 23-4.)

Fyda Columbus then brought its own protest against Daimler with the same request as Fyda Cincinnati. (ECF No. 23-3.) In that second protest, the hearing examiner found that the "line-make" issue was identical to the one considered in the first protest and dismissed the second protest on issue preclusion grounds. The examiner found that Fyda Columbus was bound by the Board's earlier decision. (*Id.*, PageID 116.) The Board adopted the hearing examiner's decision in June 2015. (ECF No. 23-5.)

In resolving both protests, the Board followed Ohio's statutory process for adopting a hearing examiner's recommendations by declining to take further action on the recommendation for 30 days; in doing so, it adopted both of the examiner's decisions. R.C. § 4517.58. Neither Fyda Cincinnati or Fyda Columbus appealed, and the Board's decisions became final. *See* R.C. § 119.12(N).

4

*Plaintiffs' Claims Before this Court*

Plaintiffs now seek damages for Defendants' alleged wrongful termination of their franchise agreements and other violations of Ohio and Pennsylvania law. Plaintiffs brings claims for: (1) Defendants' unlawful cancellation of the franchise agreements under Ohio Rev. Code. § 4517.54(A) and 63 Pa. Stat. § 818.312(a); (2) MBUSA's violation of Ohio Rev. Code § 4517.542(F); and (3) Defendants' unfair allocation of Sprinter vans under Ohio Rev. Code § 4517.59(15) and 63 Pa. Stat. § 818.310(b)(12).

## II. MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiffs move to file a sur-reply. (ECF No. 32.) The Local Rules prohibit "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2); *De Angelis v. Nat'l Ent. Grp. LLC.*, 2019 WL 1024954, at *2 (S.D. Ohio Mar. 4, 2019) (Marbley, J.). While the Local Rules do not define good cause, "this Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *De Angelis* (citing *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (Kemp, M.J.).

Plaintiffs move primarily on the grounds that Defendants "imply in their reply brief . . . that Fyda was somehow required to offer an affidavit demonstrating the reasons why it had little incentive to litigate fully the Ohio Board protests." (ECF No. 32, PageID 252.) The implication referenced by Plaintiffs is a passing

5

comment in a footnote of Defendants' reply brief. (ECF No. 29, PageID 227 n.4.) Defendants did not offer new, substantive arguments or facts in their Reply that require a response.

Moreover, Plaintiffs' sur-reply expands on the issue preclusion arguments already addressed in their Response. A sur-reply is not an opportunity for a party to reargue its response brief. *See De Angelis*, *2–*3.

Plaintiffs' Motion for Leave to File a Sur-Reply is **DENIED,** and the Sur-Reply Brief is **STRICKEN**.

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### B. Analysis

Defendants contend that dismissal is appropriate because the Board's decision that Freightliner Sprinters and Mercedes-Benz Sprinters are different "line-makes" resolves all claims. Defendants ask the Court to give preclusive effect to the Board's finding – which, as discussed below, is determinative of all Plaintiffs' claims.

To begin, it is helpful to understand Plaintiffs' claims in some detail. Starting with Claim 1, to prevail under R.C. § 4517.54(A) and 63 Pa. Stat. § 818.312(a), Plaintiffs must show that their franchise agreements were terminated without good or just cause. A determination that the Sprinters are separate line-makes resolves this claim because, under both Ohio and Pennsylvania law, when a distributor discontinues a line-make of a motor vehicle, the distributor may terminate a franchise if it pays dealers of the discontinued line-make the fair market value for that line-make. *See* R.C. §§ 4517.541(A)(3), 4517.542(A)(6), 63 Pa. Stat. § 818.313(a)(2)(ii). "Cause" is not an issue when a line-make is discontinued because

7

distributors cannot distribute a discontinued line-make. Ohio and Pennsylvania law contemplate this exact situation and address it by requiring that the manufacturer pay the dealer fair market value for the discontinued line. *Id.*

To prevail against MBUSA on Claim 2 under R.C. § 4517.542(F), Plaintiffs must show that MBUSA had an obligation to continue distributing Sprinters to Fyda Cincinnati and Fyda Columbus because of a changed plan of distribution. If, however, the Freightliner Sprinter as a distinct line-make was discontinued, then there has been no change in a distribution plan as defined by the statute; rather, the Freightliner Sprinters were discontinued. *See* R.C. § 4517.542(F).

And for Claim 3, to prevail under R.C. § 4517.59(A)(15) and 63 Pa. Stat. § 818.310(b)(12), Plaintiffs must show that Defendants discriminated against them by disproportionately allocating Sprinters "as compared to a same line-make franchisee," R.C. § 4517.59(A)(15), and that Defendants unfairly allocated Sprinters among "dealers of the same line make." 63 Pa. Stat. § 818.310(b)(12). Thus, if the Freightliner Sprinters and Mercedes-Benz Sprinters are different line-makes altogether, then Plaintiffs cannot prevail on Claim 3.

### *The Preclusive Effect of the Board's Decision*

Under the doctrine of *res judicata*, state court judgments are given the same preclusive effect in federal court as they would have received in the courts of the rendering state. *Keymarket of Ohio, LLC v. Keller*, 483 F. App'x 967, 970 (6th Cir. 2012) (citing *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed.Appx. 994, 998 (6th Cir. 2009)). The party asserting the defense of *res judicata*

8

bears the burden of proof. *Id.* at 971 (citing *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011)).

To determine whether a state would assess a preclusive effect to a particular judgment, federal courts look to the law of the rendering state. *Id.* at 970–71 (citing *Ohio ex rel. Boggs*, 655 F.3d at 519). Under Ohio law, "the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Doe ex rel. Doe v. Jackson Local Schools Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (2007)) (internal citations omitted). Claim preclusion "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* (quoting *O'Nesti*, 862 N.E.2d at 806 (citation omitted)). In addition, claim preclusion "bars subsequent actions whose claims 'could have been litigated in the previous suit[.]'" *Id.* (alterations original) (quoting *O'Nesti*, 862 N.E.2d at 806). In contrast, "issue preclusion, or collateral estoppel, prevents the 'relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,]' even if the causes of action differ." *Id.* (alterations original) (quoting *O'Nesti*, 862 N.E.2d at 806); *see also Fort Frye Teachers Ass'n v. State Emp't Relations Bd.*, 81 Ohio St.3d 392, 692 N.E.2d 140, 144 (1998).

This case involves issue preclusion only. Issue preclusion determines the "effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided" in a prior case. *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999). Issue preclusion can apply to decisions by state administrative bodies, so long as the administrative proceedings "are of a judicial nature" and the parties "had an ample opportunity to litigate the issues" involved. *Davet v. City of Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (citing *Grava v. Parkman Twp. Bd. of Zoning Appeals*, 653 N.E.2d 226, 228 (Ohio 1995)); *See also Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797–98 (1986).

As a threshold matter, Plaintiffs argue that issue preclusion cannot be raised at the motion to dismiss stage, citing *State ex rel. Freeman v. Morris*, 579 N.E.2d 702, 703 (Ohio 1991). While this is correct in Ohio state courts, "federal courts apply federal procedural rules, which allow parties to raise the defense of [issue preclusion] at the 12(b)(6) stage." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016); *see also DeNune v. Consol. Cap. of N. Am., Inc.*, 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003). Thus, the Court can consider the defense of issue preclusion at this stage of the litigation.

Under Ohio law, issue preclusion applies when:

(1) the party against whom estoppel is sought was either a party or in privity with a party to the prior action; (2) a final judgment was rendered on the merits in the previous action following a full and fair opportunity to litigate the issue; (3) the issue on which estoppel is sought was either admitted or actually tried and decided in the prior action, and was necessary to the final judgment; and (4) the issue in the current case is identical to the issue involved in the prior suit.

10

*Dudee v. Philpot*, 133 N.E.3d 590, 599 (Ohio Ct. App. 2019) (citation omitted).[3]

### 1. Plaintiffs were either a party or in privity with the parties before the Board.

Defendants argue that Fyda Cincinnati, the party before the Board in the first protest, was in privity with Fyda Columbus (who was also a party before the Board in the second protest) and Fyda Pittsburgh because of their common interest and ownership. (ECF No. 23, Mot., PageID 94.) Plaintiffs do not dispute this. Thus, this element is satisfied.

### 2. The Board decision was a final judgment on the merits and Plaintiffs had a full and fair opportunity to litigate the central issue.

Plaintiffs first argue that the Board's decision was not on the merits because the Board dismissed Fyda Cincinnati's protest on jurisdictional grounds. Under Ohio law, issue preclusion generally does not apply to dismissals for lack of jurisdiction. *See State ex rel. Brown v. Logan*, 6 N.E.3d 42, 45 (Ohio 2014). However, when the issue decided was necessary to the jurisdictional finding, courts may give the finding preclusive effect. *See Ganley v. Subaru of Am.*, 2008 WL 2789274, 2008-Ohio-3588, ¶ 34; *Grudzinski v. Staren*, 87 F. App'x 508, 511 (6th Cir. 2004) (finding the district court correctly decided that the "doctrine of issue preclusion bars

---

[3]Pennsylvania's issue preclusion test is substantively identical to Ohio's. *See Penn Mont Securities v. Frucher*, 502 F. Supp. 2d 443, 453 (E.D. Pa. 2007).

11

relitigation" of an issue when that "identical issue was actually and necessarily adjudicated by the state court in deciding that it lacked jurisdiction").[4]

Addressing the merits of whether the Sprinter vans are the same line-make was necessary to the Board's jurisdictional finding. The Board determined that because the two Sprinter vans were distinct line-makes, it did not have jurisdiction over Fyda Cincinnati's protest. (ECF No. 23-2, PageID 112.) Thus, that the Board dismissed the protest on jurisdictional grounds does not prevent the Court from giving preclusive effect to the Board's line-make finding.

Plaintiffs had a full and fair opportunity to litigate the "line-make" issue before the Board. The Board's administrative proceedings are judicial in nature and Plaintiffs had ample opportunity to litigate – they submitted evidence and briefed the line-make issue. (See generally, ECF No. 23-2.)

Plaintiffs try to avoid the preclusive effect of the Board's decision by contending that the Board was not acting in a judicial capacity because it did not hold an evidentiary hearing and the proceedings did not resemble a trial. However, an evidentiary hearing or trial is not a precondition of issue preclusion. For example, courts routinely give issue preclusive effect to summary judgment orders absent a hearing or trial. *See Jordan v. Howard*, 2021 WL 5275974, 2021-Ohio-4025, ¶ 72 (Ohio Ct. App. Nov. 12, 2021) (applying issue preclusion based on summary judgment); *Berger v. Cushman & Wakefield of Penn., Inc.*, 2017 WL

---

[4]This exception is also recognized by Pennsylvania courts. *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 212–13 (3rd Cir. 1997) ("A dismissal for lack of subject matter jurisdiction . . . is . . . conclusive as to matters actually adjudged.").

12

3582229, at *10–11 (E.D. Pa. Aug. 18, 2017) (same). Rather, the standard is whether the plaintiff had "ample opportunity to litigate the issues" and, before the Board, the Plaintiffs in this case did.

Finally, Plaintiffs argue there was no final judgment because the Board did not affirmatively act on the recommendations of the hearing examiner, the examiner's recommendations were merely "considered approved." (ECF No. 25, PageID 176.) Plaintiffs provide no authority for the proposition that when the Board follows the statutory process for adopting a hearing examiner's recommendations, the decision is not final. In fact, absent an appeal, the Board's decision is final when it adopts an examiner's recommendation by taking no action for 30 days. R.C. § 4517.58.

In sum, the line-make issue was adjudicated on the merits. The Board examined whether the Freightliner and Mercedes-Benz Sprinters were distinct line-makes, and that issue was dispositive of the Board's jurisdiction over the protests. (ECF No. 23-2, PageID 107.) The Board's decision on the line-make issue was a final judgment and no appeal was taken therefrom. Accordingly, this second element of issue preclusion is satisfied.

### 3. The issue was actually decided in the prior action and was necessary for final judgment.

Plaintiffs do not dispute that the Board actually and necessarily decided that the Freightliner and Mercedes-Benz Sprinters are different line-makes. (ECF No. 23-2, PageID 111.) Rather, they argue that applying issue preclusion would violate their due process rights because they did not have a strong incentive to litigate the

line-make issue before the Board, and because they could not have foreseen that the Board's decision would later be given preclusive effect.

Precluding a party from relitigating an issue may violate due process even if issue preclusion is otherwise applicable, "where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 986 (Ohio 1983). Ohio state courts consider this exception when the dispute arises over an issue that was "nonmaterial" at the time of the earlier judgment. *Williams v. Chippewa Roofing, Inc.*, No. 96CA0089, 1997 WL 537679, at *4 (Ohio Ct. App. Aug. 20, 1997).

Here, the line-make issue was material to the Plaintiffs' protest because it was dispositive of the Board's jurisdiction to prohibit a new competitor-dealer from entering Fyda Cincinnati's market area. (ECF No. 23-2, PageID 107.) The nature of the line-make issue is such that Plaintiffs could have foreseen that the judgment would be used in future proceedings, even if the future claims were different – this is particularly so given that the "line-make" definition is the same throughout Ohio dealer laws. The Board's line-make determination had the potential to expand or limit Plaintiffs' statutory and contractual rights to include the Mercedes-Benz Sprinter both presently and into the future. And Plaintiffs had ample incentive to litigate fully and vigorously over the line-make issue because the protest's outcome determined whether a new competitor-dealer could enter its market area. *See* R.C. §

14

4517.50. Giving preclusive effect to the Board's decision poses no due process concerns. Thus, this element is satisfied.

### 4. The issue decided by the Board is identical to the issue before the Court.

Plaintiffs argue that the first protest involved a different Ohio statute than those at issue in this case. However, issue preclusion applies even if the facts and law differ across proceedings so long as the prima facia elements of issue preclusion are satisfied. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). The Board considered Ohio's only statutory definition of "line-make" and determined that Freightliner Sprinters and Mercedes-Benz Sprinters are different line-makes. (ECF No. 23-2, PageID 111.) The line-make issue decided by the Board is the same line-make issue raised in this case. Thus, this element is satisfied.

### 5. Conclusion

Finding all of the elements met, the Court gives preclusive effect to the Board's finding that the Freightliner Sprinters and Mercedes-Benz Sprinters are different line-makes. Because the Sprinters are different line-makes, Plaintiffs fail to state a claim as to all three claims.

For Claim 1, "cause" is not an issue because the Freightliner Sprinter as a separate line-make was discontinued, and Defendants cannot distribute a discontinued line-make. Ohio and Pennsylvania law require the distributor to make fair market value payments to address this situation. For Claim 2, there has been no change in a distribution plan that invokes R.C. § 4517.542(F) because the Freightliner Sprinter was discontinued. For Claim 3, Defendants have not

15

discriminated against Plaintiffs by disproportionately allocating Sprinters because MBUSA and Freightliner dealers are not dealers of the "same line-make."

The Court gives preclusive effect to the Board's decision as to Plaintiffs' claims under both Pennsylvania and Ohio law. Ohio and Pennsylvania's definitions of "line-make" are substantively the same. *See Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) (applying issue preclusion to block Ohio law claim based on previous decision involving Arkansas law, where the two states' standards were "nearly identical"). Ohio law defines "line-make" as a "collection of models, series, or groups of motor vehicles manufactured by or for a particular manufacturer, distributor, or importer that are offered for sale, lease, or distribution pursuant to a common brand name or mark." R.C. § 4517.542(J)(2). Pennsylvania law similarly defines it as "groups of vehicles that are offered for sale, lease, or distribution under a common name, trademark, service mark or brand name of the manufacturer or distributor of those same vehicles." 63 Pa. Stat. § 818.102. Plaintiffs themselves allege that this is a common question of law (Compl., ¶¶ 65, 65(b)), and the Court agrees.

Accordingly, Plaintiffs fail to state a claim upon which relief can be granted. Defendants' Motion (ECF No. 23) is **GRANTED**.

## IV.  Plaintiffs' request to amend their complaint.

In response to Defendants' motion to dismiss, Plaintiffs requested leave to amend their complaint should the Court dismiss Claim 1. (ECF No. 25, Resp.,

16

PageID 186.) Specially, they want to add a claim that Defendants "fail[ed] to act in good faith" as required by R.C. § 4517.59(A)(1).

An informal request made in response to a motion to dismiss "without any indication of the particular grounds on which amendment is sought" is not deemed a Federal Rule of Civil Procedure 15 motion to amend. *Gonzalez v. Kovacs*, 687 F. App'x 466, 470 (6th Cir. 2017) (citations omitted). In the absence of a Rule 15 motion, the Court may deny such an informal request and has discretion to explain its reasoning for denial. *See id.* at 470–71. Here, amending would be futile because, as Plaintiffs explain, the claim they seek to add is "redundant" of Claim 1 – which is why it was intentionally omitted in the first instance. (Resp., PageID 186.) This is not a reasonable ground to amend. Accordingly, the Court **DENIES** Plaintiffs' informal request for leave to amend.

## V. DEFENDANTS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDAM

Defendants' proposed supplemental memorandum seeks to address a recent decision issued by the Western District of Wisconsin. That decision is not relevant to the issue preclusion analysis that resolves this case. Accordingly, Defendants' motion for leave (ECF No. 37) is **DENIED**.

## VI. CONCLUSION

Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 30) is **DENIED**. Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 23) is **GRANTED**. Defendants' Motion for Leave to File a Supplemental Memorandum (ECF No. 37) is **DENIED**. The Clerk is **DIRECTED** to **TERMINATE** this case

17

from the docket of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**